PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GOLDMARK FRIENDSHIP, LLC, a
Nevada Limited Liability Company,
on behalf of PrimeHealth
Corporation in Receivership,
                    *Plaintiff-Appellant,*

            v.                                      No. 01-2373

AMERICAN EXPRESS TAX AND
BUSINESS SERVICES, INCORPORATED;
WALPERT AND WOLPOFF, LLP;
JOHNSON LAMBERT AND COMPANY,
                    *Defendants-Appellees.*

GOLDMARK FRIENDSHIP, LLC, a
Nevada Limited Liability Company,
on behalf of PrimeHealth
Corporation in Receivership,
                    *Plaintiff-Appellant,*

            v.                                      No. 02-1132

AMERICAN EXPRESS TAX AND
BUSINESS SERVICES, INCORPORATED;
WALPERT AND WOLPOFF, LLP;
JOHNSON LAMBERT AND COMPANY,
                    *Defendants-Appellees.*

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, Chief District Judge.
(CA-01-2344-S)

Argued: May 7, 2002

Decided: September 20, 2002

Before WIDENER and MICHAEL, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the United States Court
of Appeals for the Eighth Circuit, sitting by designation.

---

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Senior Judge Beam joined. Judge Michael wrote an opinion
concurring in the judgment and concurring in part.

---

### COUNSEL

**ARGUED:** Sunanda Kumari Holmes, Chevy Chase, Maryland, for
Appellant. James Patrick Ulwick, KRAMON & GRAHAM, P.A.,
Baltimore, Maryland, for Appellees. **ON BRIEF:** Laura Maroldy,
KRAMON & GRAHAM, P.A., Baltimore, Maryland; Kevin M. Mur-
phy, Alan Titus, CARR MALONEY, P.C., Washington, D.C., for
Appellees.

---

### OPINION

WIDENER, Circuit Judge:

This case concerns the procedure under Maryland and federal law
for shareholders of a corporation in receivership to sue for allegedly
negligent or wrongful accounting practices by firms hired to audit the
corporation's records.

I.

Goldmark Friendship LLC (Goldmark), the plaintiff, is the sole
shareholder of PrimeHealth Corp., a certified Health Maintenance

Organization (HMO) and Managed Care Organization (MCO) organized under Maryland law.[1] In March 1998, the Maryland Insurance Commissioner directed the Maryland Insurance Administration to investigate the financial viability of PrimeHealth. The report of the Administration first noted discrepancies in PrimeHealth's accounts receivables and liabilities, which had allowed PrimeHealth to qualify for HMO and MCO status under Maryland law,[2] and also indicated that PrimeHealth had misrepresented its relationships with various business entities and used funds in connection with those businesses. Based on this report, the Commissioner sought to have himself appointed receiver for PrimeHealth. PrimeHealth initially demanded a hearing to contest this report, but then signed an order authorizing appointment of the Commissioner as receiver before that hearing was held. The Baltimore City Circuit Court placed PrimeHealth in receivership, appointing the Commissioner as receiver.[3]

The present suit originated with action taken by the receiver to evaluate PrimeHealth's financial status.[4] The receiver retained Walpert & Wolpoff (Walpert), an accounting firm owned by American Express Tax and Business Services to audit PrimeHealth as of December 31, 1998. He employed Johnson Lambert and Co. to perform the same audit for 1999. Goldmark alleges the following against Walpert. First, Walpert had a conflict of interest because it was

---

[1] Dr. Christian C. Chinwuba and his wife own roughly an 80 percent interest in Goldmark.

[2] The report indicated that PrimeHealth had overstated its accounts receivable and understated its liabilities.

[3] The Baltimore City Circuit Court issued an order adopting and finalizing the report of the Administration and dismissing Goldmark's, PrimeHealth's, and Dr. Chinwuba's petitions for circuit court judicial review which was affirmed in *PrimeHealth Corp. v. Ins. Comm'r*, 758 A.2d 539 (Md. App. 2000).

[4] Goldmark, PrimeHealth, and Dr. Chinwuba have brought various lawsuits. These actions concern, but are not limited to, the appointment of the Commissioner as receiver; defamation, invasion of privacy, and Constitutional violations by the Commissioner; impartiality by the Baltimore City Circuit Court judge; the validity of PrimeHealth's consent to receivership; and termination of the receivership proceedings. None of these actions are presently before this court.

already under contract with the Administration and the Commissioner to audit other Maryland HMO's and MCO's. Second, this conflict induced Walpert to perform PrimeHealth's audit without utilizing generally accepted accounting procedures and generally accepted auditing standards, ultimately rendering PrimeHealth insolvent. Third, apart from its desire to retain the Administration's independent auditing contract, the motivation for Walpert's wrongful conduct was racial bias, since both PrimeHealth and Goldmark were African-American owned companies. Goldmark makes the same allegations, except the racial bias claim, against the firm hired to perform the 1999 audit, Johnson Lambert and Company. In addition, Goldmark claims that Johnson Lambert, aware of Walpert's negligence, failed to disclose any wrongdoings to Walpert, PrimeHealth, or the receiver.

## II.

A brief procedural history of this case follows. In mid-April 2001, Goldmark directly sued Walpert and Johnson Lambert. On June 26, 2001, the district court dismissed the case with prejudice under Rule 12(b)(6) for failure to state a claim; however, the order noted that it did "except to the extent the plaintiff purports to maintain a derivative claim, which is dismissed without prejudice to refiling after demand will have been made on the Receiver."

Goldmark filed the present derivative action in early August 2001. Section III, paragraph nine of this complaint reads: "Goldmark made a demand on PrimeHealth's Receiver to sue the defendants herein, however, he refused to do so." This allegation is corroborated by a line filed in the Baltimore City Circuit Court. On September 21, 2001, Walpert, American Express, and Johnson Lambert moved to dismiss the complaint. On October 17, 2001, the district court granted defendants' motions to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), stating that plaintiff failed to illustrate a violation of the business judgment rule and that there was no allegation that the receiver's failure to bring suit had been brought to the attention of the Maryland court overseeing the receivership, another requirement for bringing a suit such as this. Motions for reconsideration were denied on November 12, 2001.

On appeal Goldmark asks that we reverse the judgment of the district court, arguing along the way that it erred in denying the motions

for reconsideration and denying leave to file an amended complaint. We affirm the district court's decision to dismiss the case but emphasize that our dismissal is not a decision on or an expression of opinion with relation to the merits of the claim that Goldmark seeks to derivatively assert against Walpert and Johnson Lambert. We discuss the decision to dismiss the case but because the amended complaint does not allege that Goldmark has petitioned the Baltimore City Circuit Court, which is the receivership court, to prosecute its claim against Walpert and Johnson Lambert, the motion of Goldmark to amend its complaint is patently without merit and we so hold.

As noted, PrimeHealth was adjudged to be in receivership by the Circuit Court of Baltimore City October 1, 1998, and the Maryland Commissioner of Insurance was appointed receiver by that court. That action was affirmed by the Maryland Court of Special Appeals in *PrimeHealth Corp. v. Ins. Comm'r*, 758 A.2d 539 (Md. App. 2000). The order appointed the Commissioner "as receiver for the purpose of rehabilitation of . . . PrimeHealth . . . ." The order stated, among other things:

> 2. The receiver shall have the powers and duties vested in him by the provisions of Title 9 . . . Annotated Code of Maryland . . . and shall forthwith take possession of the property of defendant and shall conduct the business thereof under the general supervision of the court . . . .

The claims derivatively asserted by Goldmark against Walpert and Johnson Lambert are claims of the corporation not the claims of Goldmark itself. They are rights of action and a part of the property of the corporation. We see no difference between this suit of the corporation against its employees Walpert and Johnson Lambert and the suit of a corporation against its officers for misappropriation of its property. In such a case, the Supreme Court held the claim "is a right of the corporation" and continued "[t]he whole property of the corporation within the jurisdiction of the court which appointed the receiver, including all its rights of action, except so far as already lawfully disposed of under orders of that court, remains in its custody, to be administered and distributed by it. Until the administration of the estate has been completed and the receivership terminated, no court of the one government can by collateral suit assume to deal with

rights of property or of action, constituting part of the estate within the exclusive jurisdiction and control of the courts of the other." *Porter v. Sabin*, 149 U.S. 473, 478, 479 (1893).

The Court in *Porter* affirmed the federal circuit court which had dismissed the case in which the state court, which appointed the receiver, had denied a petition for stockholders to prosecute the claim against the officers of the corporation. And the *Porter* Court stated "[i]t is for that [receivership] court, in its discretion, to decide whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere. It may direct claims in favor of the corporation to be sued on by the receiver in other tribunals . . . ." 149 U.S. at 479.

The same result was obtained in the case of *Wabash R. Co. v. Adelbert College*, 208 U.S. 38 (1908), in which an Ohio state court had authorized foreclosure of a mortgage on the property of the railway which was in receivership in a circuit court of the United States. In the *Wabash* case the Court reasoned "[w]hen a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The latter courts, although of concurrent jurisdiction, are without power to render any judgment which invades or disturbs the possession of the property while it is in the custody of the court which has seized it." 208 U.S. at 54. "Those principles [with respect to receivership] are of general application and not peculiar to the relations of the courts of the United States to the courts of the states; they are, however, of especial importance with respect to the relations of those courts, which exercise independent jurisdiction in the same territory, often over the same property, persons, and controversies; they are not based upon any supposed superiority of one court over the others, but serve to prevent a conflict over the possession of property, which would be unseemly and subversive of justice; and have been applied by this court in many cases . . . ." 208 U.S. at 54.

Maryland law is the same. In *Pritchard v. Myers*, 197 A. 620 (Md. 1938), a bank was in receivership and certain creditors and depositors of the bank sued directors of the bank charging neglect in the discharge of their duties. The complaint charged that the receiver of the

bank had been requested to proceed against the directors but had refused to act. That same situation pertains here. The Maryland court held that the derivative suit of the bank against its directors prosecuted by the plaintiffs could not be maintained. The Court recited that the "bill of complaint attempts to justify its inception on the allegation that the receiver had been requested, but refused, to institute an action against the directors for the benefit and reimbursement of the depositors and creditors." 197 A. at 626. The Court's holding is in plain English and is a decision on the same facts present here. It is:

> The Court is of the opinion that these allegations are insufficient. The receiver is the officer of the court, and acts under its supervision and by its direction. The refusal of the receiver was not the act of the court, but was subject to the court's review and control. The plaintiffs at bar are not shown to have invoked the court's consideration and decision. Nor does the appeal that the receiver's refusal was brought to the court's attention. The orderly course is to present the question on petition and hearing in the pending receivership cause. And thus obtain the court's judgment and order.

197 A. at 626. And the Maryland Court of Special Appeals in *Tafflin v. Levitt*, 608 A.2d 817 (Md. App. 1992), followed *Pritchard* and held that in such a case, to maintain a derivative suit for the benefit of the corporation in receivership, a demand on the receiver and a petition of the receivership court are applicable. 608 A.2d at 820.

Accordingly because the plaintiff did not petition the receivership Maryland court to require the receiver to prosecute the derivative action it now seeks to prosecute, the judgment of the district court is

*AFFIRMED*.[5]

---

[5]Just as the district court correctly held that merely requesting the receiver to prosecute this suit, and his refusal of the request, is of itself an insufficient reason to permit this case to continue, the *Pritchard* case so holds. We emphasize that we do *not* decide that merely filing a petition in the receivership Maryland court is a sufficient predicate for per-

MICHAEL, Circuit Judge, concurring in the judgment and concurring in part:

I concur in the judgment. In addition, I readily join in the majority's opinion to the extent it holds that Maryland law required Goldmark Friendship, L.L.C. to petition the state receivership court for an order directing the receiver to bring the derivative action that Goldmark seeks to prosecute itself. I respectfully decline to join the general discussion about whether federal courts can exercise authority over property that is under the supervision of a state receivership court.

---

mitting this case to proceed in this court. As *Porter v. Sabin*, *supra*, and *Wabash R. Co. v. Adelbert College*, *supra* demonstrate, even such a petition and its refusal by action of the receivership court may well not be sufficient predicates upon which to rest this derivative action asserting a right of action belonging to the receiver. Indeed, in *Wabash R. Co.* the Court stated: "The defendants in error [plaintiff here] must pursue their remedy in that [receivership] court, which doubtless will consider the decisions of the state courts on questions of state law with the respect which the decisions of this court require." 208 U.S. at 57.